Curia, per

Earle, J.
The principal question which we have to decide, arises out of the first ground of the defendant’s motion, and depends on the construction of the verdict rendered by the jury on the first issue. If we are to construe *244 the verdict according to the meaning and intention of the jury, (if there be any thing equivocal in its terms,) we must see what questions they were called on to decide. Every verdict must conform to the issue ; and this verdict, on a former occasion, in Arrants vs. Dunlap, decided here last term, was held to cover the issues, or one of the issues, and therefore not to be immaterial and irrelevant. Five grounds of objection were taken to the defendant’s discharge, when arrested at the suit of Arrants, and without reciting them, it may be confidently stated that they presented but two charges, variously modified. The first and fifth alledged that the schedule was fraudulent and false in this, that it did not contain all the effects of the defendant, but had omitted sundry articles of property enumerated, and particularly, large sums of money. The second alleged the schedule to be fraudulent and false in this, that it subjected the assets to a certain assignment, which was fraudulent, and the debts to be secured by it, pretensive and unfounded. The third was, that the defendant had fraudulently transferred and delivered his property to J. J. Dunlap, under the said fraudulent assignment, to defeat his creditors. And the fourth was, that he had given an undue preference to one creditor to the prejudice of the plaintiff. His Honour, Mr. Justice O’Neall, therefore correctly stated the accusation to be, 1st. That the schedule was false; 2d. That the assignment made to J. J. Dunlap, was fraudulent. Upon those questions issue was taken, and the jury rendered the following verdict. “We find the assignment to be false and fraudulent, and should be void.”
I cannot perceive the force of the reasoning, by which this, verdict is made to convict the defendant of having rendered a false schedule. There is no pretence that it was false, for having omitted any portion of his estate or effects. It seems to be admitted that every thing was included ; and the argument is, that it was a false schedule, because it subjected the effects to an assignment which was fraudulent. What is *245 meant by “ a schedule, on oath, of his or her whole estate,” is, that it shall contain a true account and statement of all the property of the defendant, or to which he had any just claim, subject, of course, to all prior liens or incumbrances ; and the “false schedule” in the 10th section, is one which omits a portion of the property. It is not rendered a false schedule because it may specify liens which are even pretended or fraudulent; much less so, if the assignment to which it may subject the effects, be for a debt really due, although the assignment may be void, as an undue preference of one creditor to another. Now the assignment in this case may have been fraudulent and void, although there may have been a just debt due to James J. Dunlap.
The construction contended for by the actors on this motion, would abolish all distinction between three classes of cases provided for in the 7th section; 1st. Making a false return ; 2d. Having preferred one creditor to another; 3d. Having fraudulently sold, conveyed or assigned the estate to defraud creditors. By the 10th section, it is only a conviction of the first which would deprive the petitioner of the benefit of the Act then, or afterwards; and the provision itself, by the force of its own express terms, implies and supposes that there may be cases of fraudulent preference of creditors, or fraudulent assignment to one who is not a creditor, which would not come within the meaning of that section. Now, the verdict in question is obviously framed to meet the allegation of the plaintiff, that the assignment to J. J. Dunlap, was fraudulent; and not that the schedule was false . If the plaintiff had desired it, the jury might have been required to find on the other issues; or, if there was any ambiguity in the verdict, they might have been required to amend it. But if he acquiesced in it, as sufficient for his purpose, to prevent the discharge of the defendant without paying his debt, (which was the legal effect,) he cannot, or rather others cannot now pome in and claim to give it a more comprehensive effect. *246 The use of the word ‘ assignment,’ would alone be sufficient to point the finding to the issue made on that subject; and when they add “ and should be void,” no doubt, I think, ré-mains that such was the intention of the jury, for it would be senseless to speak of a schedule being void. The defendant, by rendering a schedule which contained a true statement of all his visible effects and choses in action, or of such as he had owned, .although subject to the claim of J. J. Dunlap under the assignment, cannot be deprived of the benefit of the insolvent debtor’s law in other cases, because the jury have said the assignment was fraudulent. Admitting that the verdict is equivocal in its terms ; the very fact that the intention of the jury is uncertain, that we do not know that they meant to convict the defendant of having rendered a,false schedule, and that they have clearly found the assignment to be fraudulent on the other issue, which was sufficient for the plaintiffs purpose on that proceeding, should decide the present question, and induce us to construe the verdict so as to give it only that effect; especially when we consider that a different construction will have the effect of subjecting the defendant to lasting confinement.
On the second ground of the motion, we are all of opinion, that so far as regards the case of Arrants, the defendant was not entitled to his discharge. He was convicted, by the verdict in that case, of having made a fraudulent assignment to the prejudice of his creditors; and his case does come expressly within the second clause of the 7th section of the prison bounds Act, “nor'shall any prisoner be discharged without fully satisfying the action or execution on which he is confined, if” [among other things] “he shall have fraudulently sold, conveyed or assigned his estate, to defraud his creditors.” The words any prisoner in connection with the word action, as distinguished from execution, together with the whole scope of the Act, to provide for persons confined either on mesne process, or on execution, demonstrates that *247 the opinion of the court in the case of McClure & Mims vs. Vernon, (2 Hill 433,) was formed on a hasty examination and comparison of the different sections; and that the principal enactments, both of the 4th and 7th sections, relate to both classes of prisoners. If there were any doubt, it would be removed by the Act of 1833, as remarked by Mr. J. Butler, in Arrants vs. Dunlcup. The defendant, under that verdict, was not entitled to be discharged, without fully satisfying the action on which he was confined. And we think the court below decided erroneously on that point.
The third ground being obviated, or abandoned, it remains only to remark on the fourth, that William Cavan, the witness proposed to be sworn, was one of those who resisted the defendant’s discharge. He was one of the plaintiffs on the issue; he was necessarily to be benefitted by any verdict, which would have the effect to retain the defendant in confinement until his debt was paid; and he could not testify without affecting his own interest. This court concurs with the circuit court on that point.
A majority of the court are of opinion, that the defendant was entitled to be discharged from all the actions or executions, by virtue of which he was confined, except that of Arrants, in relation to which, the motion to reverse the circuit decision is granted. In regard to all the others, the motion is refused.
Gantt, Richardson and Evans, JJ. concurred.